UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:22-cr-082 |
|  | ) | Criminal No. 4:22-cr-152 |
| v. | ) |  |
|  | ) | **PLEA AGREEMENT** |
| JONATHAN FRANCIS SPEIDEL, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

The United States of America (also referred to as "the Government"), Defendant, JONATHAN FRANCIS SPEIDEL, and Defendant's attorney, enter into this Plea Agreement.

## A.   CHARGES

1.   <u>Subject Offenses</u>.  Defendant will plead guilty to Count 6 of the Superseding Indictment in case 4:22-cr-082, that is, Sexual Exploitation and Attempted Sexual Exploitation of a Child, in violation of Title 18, United States Code, Section 2251(a), (e), Count 14 of the Superseding Indictment in case 4:22-cr-082, that is, Enticement and Attempted Enticement of a Minor, in violation of Title 18, United States Code, Section 2242(b), and Count 28 of the Superseding Indictment in case 4:22-cr-082, that is, Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and 2252A(b)(2).  Defendant also will waive Indictment (by executing a separate Waiver of Indictment form) and plead guilty to Count 1 of a United States Attorney's Information in case 4:22-cr-152 charging a violation of Title 18, United States Code, Section 2423(b), that is Travel with Intent

1

to Engage in Illicit Sexual Activity.   Defendant also agrees to forfeiture of the electronic devices set forth in the plea agreement and listed in the Superseding Indictment in case 4:22-cr-082.

2.   <u>Charges Being Dismissed</u>.   If the Court accepts this Plea Agreement, the following Counts of the Superseding Indictment in case 4:22-cr-082 will be dismissed at the time of sentencing:

a.   Counts 1, 3, 8, 24, and 27, that is, Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2), (b)(1);

b.   Counts 2, 9, 10, 16, 20, 22, and 25, that is, Enticement and Attempted Enticement of a Minor, in violation of Title 18, United States Code, Section 2422(b);

c.   Counts 4, 12, 15, 17, 18, and 19, that is, Sexual Exploitation and Attempted Sexual Exploitation of a Child, in violation of Title 18, United States Code, Section 2251(a), (e);

d.   Counts 5, 21, 23, and 26, that is, Transportation of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(1), (b)(1); and

e.   Counts 7, 11, and 13, that is, Transfer and Attempted Transfer of Obscene Material to a Minor, in violation of Title 18, United States Code, Section 1470.

Defendant understands that, even though Counts 1-5, 7-13, 15-27 of the Superseding Indictment will be dismissed, all relevant conduct including the conduct that supported the charges in Counts 1-5, 7-13, 15-27 will be considered by the Court at the time of sentencing.

2

**B.**     **MAXIMUM PENALTIES**

3.     <u>Maximum and Mandatory Minimum Punishment</u>.     Defendant understands that the crime to which Defendant is pleading guilty to in Count 6 of the Superseding Indictment in case 4:22-cr-082 carries a mandatory minimum sentence of at least 15 years in prison and a maximum sentence of 30 years in prison; a maximum fine of $250,000; and a term of supervised release of at least 5 years and up to life.   Defendant further understands that the crime to which Defendant is pleading guilty to in Count 14 of the Superseding Indictment in case 4:22-cr-082 carries a mandatory minimum sentence of at least 10 years in prison and a maximum sentence of life in prison; a maximum fine of $250,000; and a term of supervised release of at least 5 years and up to life. Defendant also understands that the crime to which Defendant is pleading guilty to in Count 28 of the Superseding Indictment in case 4:22-cr-082 carries a maximum sentence of 20 years in prison; a maximum fine of $250,000; and a term of supervised release of at least 5 years and up to life. And Defendant understands that the crime to which Defendant is pleading guilty to in Count 1 of the Information in case 4:22-cr-152 carries a maximum sentence of 30 years in prison; a maximum fine of $250,000; and a term of supervised release of at least 5 years and up to life.   A mandatory special assessment of $100 per count must also be imposed by the Court. Defendant also understands that, if the Court determines Defendant to be a non-indigent person, pursuant to Title 18, United States Code, Section 3014(a)(3), it shall impose an assessment of $5,000 per count. In addition, pursuant to 18 U.S.C. § 2259A, the Court shall assess not more than

$50,000. Defendant understands that the Court may not impose a sentence less than the mandatory minimum sentence unless the Government files a motion for substantial assistance under 18 U.S.C. § 3553(e). No one has promised Defendant that Defendant will be eligible for a sentence of less than the mandatory minimum. Defendant understands that these sentences may be imposed consecutively.

4. <u>Supervised Release—Explained</u>.   Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions.   If Defendant were to violate a condition of supervised release, Defendant could be sentenced to not more than 5 years in prison on any such revocation, without any credit for time previously served.

5. <u>Detention</u>.   Pursuant to the Mandatory Detention for Offenders Convicted of Serious Crimes Act (18 U.S.C. § 3143), Defendant agrees to remain in custody following the completion of the entry of Defendant's guilty plea to await the imposition of sentence.

## C.   NATURE OF THE OFFENSE -- FACTUAL BASIS

6. <u>Elements Understood</u>.   Defendant understands that to prove the offense alleged under **Count 6 of the Superseding Indictment in case 4:22-cr-082 (Sexual Exploitation and Attempted Sexual Exploitation of a Child)**, the Government would be required to prove beyond a reasonable doubt the following elements:

(a)   On the date charged, the victim was under the age of 18 years;

4

(b)     Defendant knowingly employed, used, persuaded, induced, enticed, or coerced the victim to engage in sexually explicit conduct;

(c)     Defendant acted with the purpose of producing a visual depiction of such conduct; and

(d)     A visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, or the visual depiction had actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer.

7.     Defendant further understands that to prove the offense alleged under **Count 14 of the Superseding Indictment in case 4:22-cr-082 (Enticement and Attempted Enticement of a Child)**, the Government would be required to prove beyond a reasonable doubt the following elements:

(a)     Defendant knowingly used a computer or other interstate facility to persuade, induce, entice, or coerce an individual under the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense;

(b)     Defendant believed that such individual was less than 18 years of age; and

(c)     If the sexual activity had occurred, Defendant could have been charged with a criminal offense under the laws of the United States.

8.     Defendant further understands that to prove the offense alleged under **Count 28 of the Superseding Indictment in case 4:22-cr-082 (Possession of Child Pornography)**, the Government would be required to prove beyond a reasonable doubt the following elements:

(a)     On or about the date charged, Defendant knowingly possessed a visual depiction(s) of child pornography;

(b)     Defendant knew that the visual depiction(s) was of a minor engaging in sexually explicit conduct and at least one visual depiction involved a prepubescent minor or a minor who had not attained 12 years of age; and

(c)     The visual depiction(s) had been mailed, or shipped, or transported using any means or facility of interstate or foreign commerce by any means, including by computer or cellular phone.

9.      Defendant further understands that to prove the offense alleged under

**Count 1 of the Information in case 4:22-cr-152 (Travel with Intent to Engage**

**in Illicit Sexual Conduct)**, the Government would be required to prove beyond a

reasonable doubt the following elements:

(a)     On or about the date charged, Defendant traveled in interstate commerce; and

(b)     Defendant's purpose in traveling in interstate commerce was to engage in illicit sexual conduct.

10.     <u>Factual Stipulations</u>. Attached hereto as Attachment "A," and

incorporated by reference herein, are factual stipulations entered into between the

parties, including the factual stipulations of Defendant's offense conduct relating to

each subject offense and Defendant's relevant conduct. Defendant acknowledges that

these statements are true.

11.     <u>Truthfulness of Factual Basis</u>.  Defendant understands that, during

the change of plea hearing, the judge and the prosecutor may ask Defendant

questions under oath about the offense to which Defendant is pleading guilty, in the

presence of Defendant's attorney. Defendant understands that Defendant must

answer these questions truthfully, and that Defendant can be prosecuted for perjury

if Defendant gives any false answers.

12.  <u>Waiver of Rule 410 Rights</u>.  Defendant expressly waives Defendant's rights under Rule 410 of the Federal Rules of Evidence and agrees that all factual statements made in this Plea Agreement, including under the Factual Basis or Attachment A, are admissible against Defendant. Should Defendant fail to plead guilty pursuant to this Plea Agreement or move to withdraw Defendant's plea or to set aside Defendant's conviction, then these admissions may be used against Defendant in the Government's case-in-chief and otherwise, including during the continuing prosecution of this case.

13.  <u>Venue</u>.  Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

**D.   SENTENCING**

14.  <u>Sentencing Guidelines</u>.   Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law.   The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case, which include, but are not limited to the following:

    a.   The nature of the offenses to which Defendant is pleading guilty;

    b.   The nature of the images involved, including the age of the children depicted, the nature of the sexually explicit conduct, and the number of such images;

    c.   Whether a computer was used in the offense;

    d.   Whether any images were distributed for the purpose of enticement of a minor;

e.   Whether the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce a minor to engage in prohibited sexual conduct;

f.   Whether Defendant unduly influenced a minor to engage in prohibited sexual conduct;

g.   Whether the offense involved the commission of a sex act, sexual contact, or a commercial sex act;

h.   Whether the offense involved sex acts, sexual contact, or aggravated sexual abuse as defined in 18 U.S.C. § 2241(a) and (b);

i.   Whether Defendant engaged in a pattern of prohibited sexual conduct;

j.   Whether Defendant attempted to obstruct justice in the investigation or prosecution of the offense;

k.   The nature and extent of Defendant's criminal history (prior convictions); and

l.   Acceptance or lack of acceptance of responsibility.

Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction.   Defendant has discussed the Sentencing Guidelines with Defendant's attorney.

15.   <u>Acceptance of Responsibility</u>.   The Government agrees as a recommendation to the District Court that Defendant receive credit for acceptance of responsibility under USSG §3E1.1(a).   The Government reserves the right to oppose a reduction under §3E1.1(a) if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or   otherwise fails to clearly demonstrate

8

acceptance of responsibility.   If Defendant qualifies for a decrease under §3E1.1(a), and the base offense level is 16 or above, as determined by the Court, the Government agrees to make a motion to the District Court that Defendant should receive an additional 1-level reduction under USSG §3E1.1(b), based on timely notification to the Government of Defendant's intent to plead guilty. The government may withhold this motion based on any interest identified in USSG §3E1.1.

16.   <u>Presentence Report</u>.   Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorney and the Government have had an opportunity to review and challenge the Presentence Report.   The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

17.   <u>Disclosure of Presentence Investigation Reports</u>. The United States District Court for the Southern District of Iowa has issued the following Administrative Order:

> The presentence investigation report is a sealed and confidential document. Unless specifically authorized by the district court, a defendant may not disseminate, disclose, or distribute a presentence investigation report, or any part or page of a presentence investigation report, in either draft or final form. A defendant who violates this order, may be subject to prosecution for contempt of court under 18 U.S.C. § 401(3). This order does not apply to a defendant's review of a presentence investigation report with the defendant's own attorney.

Defendant acknowledges and understands this order.

18.   <u>Evidence at Sentencing</u>.   The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea,

provided that such offer or comment does not violate any other provision of this Plea Agreement.   Nothing in this Plea Agreement restricts the right of Defendant or any victim (including, but not limited to, Child Victims #1-18, D.F., L.L., A.E., C.S., H.T., T.S., and any minor depicted in Defendant's collection of child pornography) to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

19.   <u>Sentence to be Decided by Judge—No Promises</u>.   This Plea Agreement is entered pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. Defendant understands that the final sentence, including the application of the Sentencing Guidelines and any upward or downward departures, is within the sole discretion of the sentencing judge, and that the sentencing judge is not required to accept any factual or legal stipulations agreed to by the parties.   Any estimate of the possible sentence to be imposed, by a defense attorney or the Government, is only a prediction, and not a promise, and is not binding.   Therefore, it is uncertain at this time what Defendant's actual sentence will be.

20.   <u>No Right to Withdraw Plea</u>.   Defendant understands that Defendant will have no right to withdraw Defendant's plea if the sentence imposed, or the application of the Sentencing Guidelines, is other than what Defendant anticipated, or if the sentencing judge declines to follow the parties' recommendations.

## E.     FINES, COSTS, FORFEITURE, AND RESTITUTION

21.     <u>Forfeiture</u>.   Defendant agrees to forfeiture of the property identified in the Superseding Indictment in case 4:22-cr-082, specifically:

   a.     A Sony computer tower, Model: Vaio PCV-RX470DS, with serial number 28400230 3006910, within which was a Quantum Fireball Plus AS 60 GB hard drive, with P/N JP-00C246-12541-14U-237Q;

   b.     A Dell laptop, Model: Inspiron 15, with serial number G26S2F2, within which was a Seagate Laptop Thin HDD 500 GB hard drive, with serial number WBY7BHFY;

   c.     A Seagate external hard drive, Model: SRD0NF1, with serial number NABH2VPY;

   d.     A Sandisk Ultra Plus 32 GB Micro SD card, with serial number 8073XV6226HR; and

   e.     A Samsung cell phone, Model: SCH-R530, with MEID number 256691486704330067, within which was a Micro SD Card 32 GB, Model: HC, with serial number 7107DUGF20Z3,

Defendant will execute any documents as directed by the Government to complete the forfeiture.

22.     <u>Waivers Regarding Forfeiture</u>.   Defendant waives all challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds.   Defendant further agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive Defendant notwithstanding the abatement of any underlying criminal conviction after execution of this Plea Agreement.   The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived and that determination shall be binding upon Defendant's heirs,

successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

23.    <u>Consent to Judgment of Forfeiture</u>.   Defendant agrees to waive all interest in assets subject to this Plea Agreement in any administrative or judicial forfeiture proceeding, whether criminal or civil, state, or federal.   Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   Defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case.

24.    <u>Fines and Costs</u>.   Issues relating to fines and/or costs of incarceration are not dealt with in this agreement, and the parties are free to espouse their respective positions at sentencing.

25.    <u>Special Assessment</u>.   Defendant agrees to pay the mandatory special assessment of $100 per count of conviction at or before the time of sentencing, as required by 18 U.S.C. § 3013. Defendant further understands that, if the Court determines Defendant to be a non-indigent person, pursuant to Title 18, United States Code, Section 3014(a)(3), it shall impose an assessment of $5,000 per count.

26.    <u>Restitution</u>.   Defendant agrees that the Court should impose an order of restitution in an amount to be determined by the Court for all relevant conduct, including all conduct related to the dismissed counts, which includes violations of 18 U.S.C. §§ 2251, 2252, 2252A(a)(1) through (5), 2252A(g), 2260(b), 2422, or 2423.

Defendant agrees that the Court shall order restitution for the full amount of losses for each victim (including, but not limited to, Child Victims #1-18, D.F., L.L., A.E., C.S., H.T., T.S., and any minor depicted in Defendant's collection of child pornography), which, for any victim of an offense of "Trafficking in Child Pornography," as that term is defined in 18 U.S.C. § 2259, shall be no less than $3,000 per victim; that such order of restitution shall be due and payable immediately; and that if Defendant is not able to make full payment immediately, Defendant shall cooperate with the United States Probation Office in establishing an appropriate payment plan, which shall be subject to the approval of the Court, and thereafter in making the required payments.  Any such payment plan does not preclude the Government from utilizing any collections procedures pursuant to the Federal Debt Collections Act and including the Treasury offset program.

27.    <u>Financial Statement</u>.  Defendant agrees to complete truthfully and in full a financial statement provided by the U.S. Attorney's Office, and return the financial statement to the U.S. Attorney's Office within 30 days of the filing of this Plea Agreement.

## F.    LIMITED SCOPE OF AGREEMENT

28.    <u>Limited Scope of Agreement</u>.  This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement.  Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax

13

matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

29.    Agreement Limited to Southern District of Iowa.    This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

30.    Sex Offender Registry.    Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon Defendant's release from prison as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Defendant also understands that independent of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's life.    Defendant understands that Defendant shall keep Defendant's registration current, shall notify the state sex offender registration agency or agencies of any changes to Defendant's name, place of residence, employment, or student status, or relevant information.    Defendant shall comply with requirements to periodically verify in person Defendant's sex offender registration information.    Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such sex offender registration requirements.    Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon Defendant's release from confinement following conviction.    As a condition of supervised release, Defendant shall initially register with the state sex offender

registration in the state of Iowa, and shall also register with the state sex offender registration agency in any state where Defendant resides, is employed, works, or is a student, as directed by the Probation Officer.  Defendant shall comply with all requirements of federal and state sex offender registration laws, including the requirement to update Defendant's registration information.  Defendant shall provide proof of registration to the Probation Officer within 72 hours of release from imprisonment.

## G.   WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

31.   <u>Trial Rights Explained</u>.  Defendant understands that this guilty plea waives the right to:

a.   Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

b.   A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

c.   The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

d.   Confront and cross-examine adverse witnesses;

e.   Present evidence and to have witnesses testify on behalf of Defendant, including having the Court issue subpoenas to compel witnesses to testify on Defendant's behalf;

f.   Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

g.   If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

32. <u>Waiver of Appeal and Post-Conviction Review</u>. Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses, and objections which Defendant could assert to the charges, or to the Court's entry of judgment against Defendant; except that both Defendant and the United States preserve the right to appeal any sentence imposed by the Court, to the extent that an appeal is authorized by law. Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255. These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct.

## H. VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

33. <u>Voluntariness of Plea</u>. Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

    a.    Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorney, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

    b.    No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

    c.    No one has threatened Defendant or Defendant's family to induce this guilty plea.

    d.    Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

16

34.     <u>Consultation with Attorney</u>.   Defendant has discussed this case and this plea with Defendant's attorney and states that the following is true:

      a.     Defendant states that Defendant is satisfied with the representation provided by Defendant's attorney.

      b.     Defendant has no complaint about the time or attention Defendant's attorney has devoted to this case nor the advice the attorney has given.

      c.     Although Defendant's attorney has given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision.   Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorney, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I.     GENERAL PROVISIONS

35.     <u>Entire Agreement</u>.   This Plea Agreement, and any attachments, is the entire agreement between the parties.   Any modifications to this Plea Agreement must be <u>in writing</u> and signed by all parties.

36.     <u>Public Interest</u>.   The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

37.     <u>Execution/Effective Date</u>.   This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

38.     <u>Consent to Proceed by Video Conferencing</u>. Defendant consents to any proceedings in this case, to include plea and sentencing proceedings, being conducted

by video or telephone technology, if the Court finds further delay would seriously harm the interests of justice. Defendant has had the opportunity to consult with Defendant's attorney about the use of video or telephone technology in this case.

## J.   SIGNATURES

39.   <u>Defendant</u>.   I have read all of this Plea Agreement and have discussed it with my attorney.   I fully understand the Plea Agreement and accept and agree to it without reservation.   I do this voluntarily and of my own free will.   No promises have been made to me other than the promises in this Plea Agreement.   I have not been threatened in any way to get me to enter into this Plea Agreement.   I am satisfied with the services of my attorney with regard to this Plea Agreement and other matters associated with this case.   I am entering into this Plea Agreement and will enter my plea of guilty under this Plea Agreement because I committed the crime to which I am pleading guilty.   I know that I may ask my attorney and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

| 10/14/22 | Jonathan Francis Speidel |
|---|---|
| Date | |

40.   <u>Defendant's Attorney</u>.   I have read this Plea Agreement and have discussed it in its entirety with my client.   There is no Plea Agreement other than the agreement set forth in this writing.   My client fully understands this Plea Agreement.   I am satisfied my client is capable of entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full knowledge of

Defendant's legal rights, and without any coercion or compulsion.  I have had full access to the Government's discovery materials, and I believe there is a factual basis for the plea.  I concur with my client entering into this Plea Agreement and in entering a plea of guilty pursuant to the Plea Agreement.

_10/14/22_
Date

Joseph Herrold
Attorney for Jonathan Francis Speidel
400 Locust Street, Suite 340
Des Moines, Iowa 50309
Telephone:  515-309-9610
Telefax:  515-309-9625
E-Mail: Joe_Herrold@fd.org

41.   <u>United States</u>.   The Government agrees to the terms of this Plea Agreement.

Richard D. Westphal
United States Attorney

_10/14/2022_
Date

By:

Kyle J. Essley
Assistant U.S. Attorney
U.S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Telephone:  515-473-9300
Telefax:  515-473-9292
E-mail: Kyle.Essley@usdoj.gov

19

Attachment "A"

STIPULATION OF FACTS

1.    As a factual basis for Defendant's pleas of guilty, and as relevant conduct to the offenses charged in the Superseding Indictment in case 4:22-cr-082 and Information in case 4:22-cr-152, Defendant admits the following:

2.    ***General Admissions, including for Count 28 of the Superseding Indictment.*** Defendant had at least three Snapchat accounts which he controlled and used. Those accounts had usernames pucks_burnin, letssbang, and sd_backupacct. The "sd" in the username sd_backupacct was short for "sugar daddy." Defendant had at least one CashApp account, with username anonmoneyyy. Defendant accessed his Snapchat and CashApp accounts using his cellphones.

3.    Using (a) those Snapchat accounts, (b) his accounts on other social media platforms, including Kik, TikTok, and MeetMe, (c) his accounts on payment platforms, including CashApp and Venmo, and/or (d) text-message communications, Defendant, for at least the last twelve years:

    a.    Enticed, coerced, persuaded, and induced, or attempted to entice, coerce, persuade, and induce, minor females to produce child pornography for his sexual pleasure or engage in other sexual activity, including, but not limited to, Child Victims #1-18, D.F., L.L., A.E., C.S., H.T., and T.S.; and

    b.    Traded child pornography with other persons.

4.    To manipulate minor females into producing child pornography for him, Defendant used various approaches depending on the victim. Among other things, Defendant:

    a.    Claimed to be a "sugar daddy," who would provide money and various other items to victims; in exchange, Defendant expected images/videos of the victims engaged in sexually explicit conduct;

    b.    Offered to pay numerous victims, and he did, in fact, pay many victims in exchange for the victims sending him child pornography;

c.   Said he was looking for "models";

d.   Misrepresented basic facts about himself, such as his name, employment information, and age;

e.   Sent his victims obscene material—usually videos of him masturbating, and sometimes child pornography;

f.   Asked his victims about their prior sexual experiences and proclaimed that he would "teach" his victims how to do certain sexual acts, what Defendant referred to as "yuckies";

g.   Often instructed his victims to call him "dad" and talked as if he was their father or superior, calling his victims "sweetheart," "sweetie," "princess," "kiddo," etc.;

h.   Attempted to legitimize his behavior—for example, after Defendant lied about his age saying that he was 24 years old to Child Victim #14, Child Victim #14 said she did not want to send him pictures because it "feels so wrong"; Defendant said "I've lit been with girls ur age lmao there's nothing wrong about it"; "You've got dudes at your school that look older than me"; "I lit dated a 15yr old last year; and "Ik[now] for a fact it's not that big of a jump from HS to dudes in there 20s"; and

i.   If Defendant understood that a victim had experienced trauma previously, he would sometimes offer support to the victim to put his victim at ease; for example, when Child Victim #14 said she had "bad trust issues from trauma," Defendant responded "we can do whatever to help you feel better or more comfortable about thattt"; "You can even talk to me ab it I'm chill."

5.   Defendant's requests for sexually explicit conduct regularly involved sex acts and sexual contact, and they often were sadistic/masochistic.

a.   One of Defendant's approaches was to ask for, and encourage his victims to send him, images or videos of his victims inserting objects, such as sharpies, hairbrushes, makeup brushes, markers, bubble wands, or (on at least one occasion) a curling iron, into their vaginas or anus. Defendant often received such images or videos upon request.

b.   At another point, Child Victim #16 told Defendant she really needed money, to which Defendant answered "Thirsty? Are you?? I wanna see you piss a cup full." Defendant agreed to pay Child

Victim #16 $100 but only if she would "talk and call [him] dad as [she was] stripping and setting up the camera." Then, she was to "Put [the camera] against the wall too like standing up so [he could] see [her] and the cup filling."

c.  If a victim informed Defendant that she was in a romantic relationship, Defendant often requested that the victim record the victim and her romantic partner engaged in sexually explicit conduct. Defendant also encouraged victims to engage in sexually explicit conduct with other individuals. For example, Defendant directed Child Victim #4 to get $50 from another person and perform oral sex on that person. Defendant would, in turn "give [the victim] 50 if u let me see everything I want while u suck. That'd be a quick 100 and you could eat some late night cum."

6.  On March 30, 2022, a search warrant was executed at Defendant's residence. Officers recovered several electronic devices which Defendant owned and possessed. Although law enforcement was unable to analyze some of Defendant's devices, they were able to complete forensic analyses of many of his devices. Several of the devices contained child pornography. At least one device indicated Defendant had been using peer-to-peer networks.

7.  The child pornography on Defendant's devices depicts minors of all ages, including infants and other children under the age of twelve. In addition, the child pornography includes depictions of children being penetrated by adult males. The "Created Date" of the child pornography—that is, the metadata field indicating when Defendant may have downloaded the files—ranges from 2009 to the present. The following table summarizes the child pornography found on the devices recovered from Defendant:

| Device | # of files | Created Date Range |
|---|---|---|
| Sony computer tower | Images: 84; Videos: 36 | 8/18/2009 - 8/8/2010 |
| Dell laptop | Images: 348; Videos: 72 | 9/19/2020 - 3/27/2022 |
| Seagate external hard drive | Images: 229; Videos: 104 | 2/2/2022 – 2/3/2022 |
| Sandisk Micro SD card | Images: 1; Videos: 2 | N/A |
| Samsung cellphone | Images: 194; Videos: 26 | 8/21/17 – 2/2/20018 |

22

8.     Defendant acquired the visual depictions of child pornography on the forementioned electronic devices using a means and facility of interstate and foreign commerce, namely by downloading the depictions from the Internet on to his electronic devices. Defendant knowingly possessed the visual depictions of child pornography on those devices and knew that the depictions were of minors engaged in sexually explicit conduct, including minors under the age of 12 years.

9.     After the search warrant was executed at his residence and up to his arrest, Defendant continued his efforts to induce minor females on Snapchat to provide him with child pornography and engage in explicit sexual conduct.

10.     ***Count 6 of the Superseding Indictment.*** Child Victim #3 was just fourteen years old when she communicated with Defendant on Snapchat in May and June 2021. Defendant used the letssbang Snapchat account to chat with Child Victim #3.

11.     Child Victim #3 told Defendant that she was fourteen years old, and Defendant understood that Child Victim #3 was that age. At one point, Defendant told Child Victim #3 "I wanna feel your 14yr old pussy grip my dad cock." Another time, Defendant told Child Victim #3 "I cannot even wait to see a 9th graders mouth fill up w my cum."

12.     During their communications, Defendant knowingly employed, used, persuaded, induced, enticed, and coerced Child Victim #3 to engage in sexually explicit conduct. Defendant did that by, among other things, engaging in sexually charged conversations with Child Victim #3, sending Child Victim #3 obscene material (*i.e.*, a video of Defendant masturbating), and instructing Child Victim #3 to send him images and videos of herself engaging in sexually explicit conduct. For instance, Defendant told Child Victim #3 to send him images and videos of her inserting objects into her vagina, and in response, Child Victim #3 recorded and transmitted to Defendant videos of herself inserting a hairbrush into her vagina.

13.     Throughout his conversation with Child Victim #3, Defendant acted with the purpose of producing images and videos of Child Victim #3 engaged in sexually explicit conduct.

14.     As a result of Defendant's efforts, visual depictions of Child Victim #3 engaged in sexually explicit conduct were produced, and they were transmitted using any means or facility of interstate commerce; specifically, they were sent via the Internet from Child Victim #3's Snapchat account to Defendant's letssbang Snapchat account.

15.     ***Count 14 of the Superseding Indictment.*** Child Victim #7 was only eight years old when she communicated with Defendant on TikTok and Snapchat in June 2021. Defendant believed that Child Victim #7 was less than eighteen years of age.

16.     To access his TikTok and Snapchat accounts to communicate with Child Victim #7, Defendant used his cellphone. Defendant used his letssbang Snapchat account to communicate with Child Victim #7.

17.     Throughout their conversations, Defendant knowingly attempted to persuade, induce, entice, or coerce Child Victim #7 to produce child pornography, sexual activity for which Defendant could be charged with a criminal offense. Defendant did that by, among other things:

    a.     Misrepresenting his identity to Child Victim #7: Defendant stated that his name was "Shaun" (but that Child Victim #7 could call him "daddy"), that he was only twenty-four years old (when he really was twenty-nine), and that he was a "sugar daddy." Before revealing his age, Defendant asked Child Victim #7 to keep it secret.

    b.     Fawning over Child Victim #7: He complimented her looks repeatedly. After he talked Child Victim #7 into sending a picture of herself clothed in black leggings, Defendant stated "Black does look good on you." At other points, Defendant said, "Your body is [emojis]," he "love[d] how [Child Victim #7's legs are] kinda jr sized," and he asked, "Did you know you're cute."

    c.    Discussing topics age-appropriate to Child Victim #7: After learning that Child Victim #7 liked art, Defendant said "I love girls that can draw." "I'd love to see your drawings sometime." He also talked about kickball, skateboarding, and the child's family.

    d.    Playing up Child Victim #7's lack of sexual experience: Defendant repeatedly referred to Child Victim #7 as shy and said he was there so that the child could "get comfortable and stop being so shy." He said "we'll take it slow until you're not shy w me anymore." "I promise I have some stuff that feels good so just trust me nd be patient it will be sooo fun." Defendant stated "can't wait until you're completely open w me." Later, he asked if they should "try some dares to work on being shy."

    e.    Offering to introduce Child Victim #7 to sexual activity: Defendant asked Child Victim #7 if she had been kissed yet; he said that he would be her first kiss "[j]ust on the lips first" because he "promised [he] would go slow." He asked if the child wanted to sit on his lap for their first kiss. Later, he asked if he could squeeze the child's butt and said it would be "quick."

    f.    Asking, repeatedly, for images and videos of Child Victim #7, some sexually explicit: Defendant asked Child Victim #7 to take a picture from her "waist down," "[l]ike waist to feet [kiss-face emoji]." After learning about Child Victim #7's sock collection, Defendant asked to see it. Then, after Child Victim #7 discussed another item, Defendant said "Sounds pretty. Can I see?" When Child Victim #7 sent Defendant an image of herself, Defendant said "See that wasnt scary huh." Defendant then asked the child to "spin around" and "show me around." Minutes later he asked for a picture of "Leggings first. Then I want you to flash me ur princess parts for my face." He added "I know ur young so you've never showed anyone."

18.    ***Count 1 of the Information.*** Around the end of October 2018, Defendant used the application MeetMe to contact Child Victim #18. Soon after, they exchanged phone numbers and began communicating, primarily, via text messaging.

19.    From approximately late October 2018 to August 23, 2019, Defendant engaged in a sexual relationship with Child Victim #18. Both Defendant and Child Victim #18 resided in Oregon during that period.

20.     During that period, Defendant was twenty-seven years old. Child Victim #18 was just fourteen years old when she met Defendant; she turned fifteen in early July 2019. Defendant knew that Child Victim #18 was only fourteen years old at the time they met.

21.     Defendant engaged multiple times in sexual activity, including vaginal, anal, and oral sex, with Child Victim #18 from the end of October 2018 to August 23, 2019. Often, the activity occurred in Defendant's vehicle at a construction site, park, or other location.

22.     Late in the evening on August 23, 2019, officers from the Gladstone (Oregon) Police Department found Defendant and Child Victim #18 in Defendant's vehicle in a park. Just prior to the officers' arrival, Defendant engaged in various sex acts with Child Victim #18. Child Victim #18 underwent a sexual assault nurse examination, during which vaginal swabs were collected. Defendant's DNA was found on the swabs collected from Child Victim #18's vagina.

23.     Defendant was arrested and charged in Clackamas County, Oregon with five Class C felonies under Oregon law: two counts of Sexual Abuse in the Second Degree; two counts of Rape in the Third Degree; and one count of Sodomy in the Third Degree. Defendant posted bond, and soon after, he returned to Iowa.

24.     After returning to Iowa, Defendant remained in contact with Child Victim #18, primarily via Snapchat. During these communications, Defendant:

    a.     Said that he was in love with Child Victim #18, that she needed to get out of her house because it was an abusive environment, and that they would move in together;

    b.     Commented that he refused to go to jail and coached Child Victim #18 on how to better his odds of not being convicted on the pending Oregon charges, telling the child to defend him and to notify the authorities that Defendant believed the child was eighteen;

    c.     Tried to reassure Child Victim #18 about their relationship, stating that others did not understand their love for each other and that, despite their age differences, their relationship was normal;

d. Asked for images/videos of Child Victim #18 everyday, including, but not limited to, images/videos of her showering, her face, her feet, her chest, and her genital areas, and images/videos of Child Victim #18 inserting objects inside of her vagina, including a bubble wand, sharpie, pen, or her hand/fingers; Child Victim #18 often sent Defendant the images/videos he requested;

e. Asked Child Victim #18 to record videos of her and her boyfriend engaging in sexual activities and to send the videos to Defendant.

25.    During their conversations while he was in Iowa, Defendant also indicated his interest in visiting Child Victim #18 in Oregon. In late August 2020, Defendant purchased tickets to fly from Des Moines, Iowa to Portland, Oregon on September 9, 2020, and to return to Des Moines on September 16, 2020.

26.    Child Victim #18 was sixteen years old in September 2020.

27.    Prior to leaving Iowa, Defendant informed Child Victim #18 what they would do when he was in Oregon: Defendant said that he was going to get a rental car, pick Child Victim #18 up, and drive to Vancouver, Washington. Defendant told Child Victim #18 that they were going to Washington because it was legal for the two of them to have sex in Washington, where the age of consent is sixteen. In contrast, as Defendant was aware, it remained illegal in Oregon for him to have sex with Child Victim #18.

28.    Upon landing in Portland in September 2020, Defendant obtained a rental car and picked Child Victim #18 up. They then drove to a hotel in Vancouver, Washington.

29.    In the hotel room, Defendant engaged in various sexual activities with Child Victim #18, including vaginal, anal, and oral sex.

30.    During their time in the hotel, Defendant showed Child Victim #18 child pornography. He also showed Child Victim #18 one of his Snapchat accounts, where his conversations with other young girls were visible.

31.    Defendant, using a cellphone, captured video recordings of him engaging in sexually explicit conduct with Child Victim #18 in the hotel room.

27

32.    The purpose of Defendant's trip from Iowa to Portland and then to Washington was to engage in sexually explicit conduct with Child Victim #18 and to produce child pornography with Child Victim #18.

33.    Defendant hereby certifies that the facts set forth above are true and accurate to the best of Defendant's knowledge.

10/14/22
Date

Jonathan Francis Speidel
Defendant

10/14/22
Date

Joseph Herrold
Attorney for Jonathan Francis Speidel

Richard D. Westphal
United States Attorney

10/14/2022
Date

By:    Kyle J. Essley
Assistant United States Attorney

28