IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Nos.  4:22-cr-082 |
| | ) | 4:22-cr-152 |
| v. | ) | |
| | ) | |
| JONATHAN FRANCIS SPEIDEL, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

**INTRODUCTION**

On June 14, 2022, the government obtained an indictment charging the defendant, Jonathan Speidel, with transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1), (b)(1).  A twenty-eight count superseding indictment was then filed on July 20, 2022, charging Mr. Speidel with: five counts of receipt of child pornography, (counts one, three, eight, twenty-four, and twenty-seven), all in violation of 18 U.S.C. § 2252A(a)(2), (b)(1); eight counts of enticement and attempted enticement of a minor, (counts two, nine, ten, fourteen, sixteen, twenty, twenty-two, and twenty-five), all in violation of 18 U.S.C. § 2422(b); seven counts of sexual exploitation and attempted sexual exploitation of a child, (counts four, six, twelve, fifteen, seventeen, eighteen, and nineteen), all in violation of 18 U.S.C. § 2251(a)(e); four counts of transportation of child pornography, (counts five, twenty-one, twenty-three, and twenty-six), all in violation of 18 U.S.C. § 2252A(a)(1), (b)(1); three counts of transfer and attempted transfer of obscene material to a minor, (counts seven, eleven, and thirteen), all in violation of 18 U.S.C. § 1470; and one count of possession of child pornography (count twenty-eight), in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).  As part of the plea agreement entered

into by the parties in the case, an information was also filed on October 18, 2022, charging Mr. Speidel with travel with intent to engage in illicit sexual activity in violation of 18 U.S.C. § 2423(b).

On October 18, 2022, pursuant to a written plea agreement, Mr. Speidel entered guilty pleas to counts six, fourteen, and twenty-eight of the superseding indictment—that is, to sexual exploitation and attempted sexual exploitation of a child, enticement and attempted enticement of a minor, and to possession of child pornography. He also pled guilty to the information charging him with travel with intent to engage in illicit sexual activity. The plea agreement calls for dismissal of the remaining counts against him at the time of sentencing. Mr. Speidel also agreed to pay restitution in the case,[1] waived his rights to appeal the conviction, waived some post-conviction remedies, and acknowledged he will be required to register as a sex offender upon release from imprisonment and as a condition of supervised release in the future. He also agreed to the notice of forfeiture in the superseding indictment, pursuant to 18 U.S.C. § 2253. The court accepted his guilty pleas on November 7, 2022.

Because the counts of conviction each involve separate victims or harms, they do not group under the rules of the advisory sentencing guidelines. USSG § 3D1.2. The presentence report drafter therefore calculated separate groups for each count of conviction. For the sexual exploitation and attempted sexual exploitation count, the base offense level is 32. (PSR ¶119). Because that offense involved a minor between the age of twelve but under sixteen, commission of a sexual act or sexual contact, involved material depicting sadistic or masochistic conduct, and

---

[1] The parties jointly recommend that the Court impose the statutory minimum of $3,000 per requesting victim in this case, based on the number of files associated with the respective series that were in Mr. Speidel's possession, the nature of the requests, and relative to the number of known cases where the series are present.

involved the use of a computer, 10 total additional levels were added. (PSR ¶¶120–123). For the enticement and attempted enticement of a minor count, the base offense level is 28. (PSR ¶128). Because that offense involved the use of a computer, and a minor who had not attained the age of twelve years, 12 total additional levels were added. (PSR ¶¶129–130a). For the possession of child pornography count, the base offense level is 18. Because the material involved a prepubescent minor or minor under age twelve, involved distribution to a minor as part of efforts to pursue their participation in sexual conduct, involved sadistic or masochistic depictions, involved the use of computer, involved 600 or more images, and because Mr. Speidel engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, 25 total additional levels were added. (PSR ¶¶136–141). Because the travel with intent to engage in illicit sexual activity involved producing child pornography and the resulting guideline calculation is higher, the count cross references to the production of child pornography/sexual exploitation guideline, and the base offense level is 32. (PSR ¶146). Because the offense involved the commission of a sexual act or sexual contact, involved material that portrays sadistic or masochistic conduct, and involved the use of a computer, 8 additional levels were added. (PSR ¶¶146–149). The multiple count adjustment then resulted in 4 levels being added to the highest offense group (which is the possession of child pornography offense in this instance), resulting in an adjusted offense level of 47. (PSR ¶¶154–157). Mr. Speidel then receives the repeat and dangerous sex offender against minors enhancement for engaging in a pattern of activity involving prohibited sexual conduct, adding 5 more levels and resulting in a total offense level of 52. (PSR ¶158).

After applying a three-level reduction for acceptance of responsibility (PSR ¶¶159–160), and calculating Mr. Speidel's criminal history category as I (PSR ¶259), because the total offense level exceeds the maximum level under the sentencing table, the the presentence report drafter

3

found a total offense level of 43, and an advisory sentencing guideline range of life imprisonment, pursuant to Chapter 5, Part A, comment note 2. (PSR ¶299). There are no advisory guideline calculation matters that require resolution. Mr. Speidel argues that a sentence of life is "greater than necessary" under the 18 U.S.C. § 3553(a) factors as applied to him under the circumstances of this case, and that a sentence below the advisory sentencing range is "sufficient" to effectuate the statutory purposes of sentencing in this case.

## ARGUMENT

Jonathan Speidel is a thirty-one-year-old delivery driver, political canvasser, retail worker, and auto center worker. (PSR ¶¶286–290). His childhood was unstable and turbulent, because his mother suffered a head injury prior to his birth which caused her to have difficulty moderating and controlling her emotions, and to engage in erratic behavior. (PSR ¶263). Because of, or related to her condition, she battled depression, anxiety, possibly schizophrenia, and relied on disability benefits to support herself and Mr. Speidel. (PSR ¶269). While she was generally not directly neglectful, when Mr. Speidel was nine years old, she hit him with her purse during an anger episode so hard that his face hit a sink and injured him to the point where he required emergency hospital care. (PSR ¶263). Emergency room doctors reported the physical abuse, which resulted in Mr. Speidel being removed from his mother's care and placed in a foster home in a different community. *Id*. His foster family was "normal" compared to what he was used to experiencing, and he received adequate care while with them. *Id*.

But Mr. Speidel's father, who had not previously been involved in his life, then obtained custody of him, and he was removed from foster care. *Id*. His father was married and had two stepchildren that were older than Mr. Speidel. (PSR ¶264). While life in this home was more stable than it had been with his biological mother, that stability did not last long. Mr. Speidel's

4

stepmother was "decent" but slightly distant toward him, and his stepbrothers were significantly older and did not develop much of a relationship with him. *Id*. His father and stepmother then divorced when Mr. Speidel was twelve, and his relationship with his stepfamily ceased completely. *Id*. His father's life spiraled downward during the divorce, and he lost a high-paying welding job, had to go to work in sales for less money, and had to downsize to an apartment for he and Mr. Speidel. *Id*. His father took out his frustrations on Mr. Speidel for the next several years by becoming abusive, expecting total subservience, and continually looking for reasons Mr. Speidel could be disciplined and be an outlet for his own pain. *Id*.

Without a stable and healthy home life, and lacking reliable parental guidance and support, Mr. Speidel suffered and would largely mentally check out of his life. He started drinking at age fourteen to dampen his emotions and thoughts at times "when life hurt[]." (PSR ¶277). He also started using marijuana at the same age to likewise avoid dealing with the reality of his situation, with the consequences of only further blunting his ambitions and diminishing his motivations. (PSR ¶278). Despite his circumstances, he successfully graduated from high school, had a few friends, and got along with his teachers. (PSR ¶¶264, 282). Things may have looked okay to an outside observer. But at home, he continued to use alcohol to manage stress in unhealthy manners, experimented with ecstasy to feel temporary surges of happiness, and needed ever stronger forms of marijuana to get an effect as his tolerance and usage increased. (PSR ¶¶277–279). He battled depression and anxiety and was placed on psychiatric medications by his general practitioner when he was seventeen. (PSR ¶275). But he never participated in any sort of therapy, and remained aimless and adrift, trying to find his way in the world without cogent guidance and without having addressed the traumas he had experienced.

Indeed, after graduating from high school in 2010, Mr. Speidel lacked any cogent direction or goals. He went to work for Domino's in West Des Moines as pizza delivery driver, where he was a good employee and has maintained positive connections with the organization over subsequent years.[2] (PSR ¶289). He tried going to Des Moines Area Community College, where he had taken some courses during high school, but he largely failed to attend, and wound up withdrawing from courses or failing them. (PSR ¶283). He felt dissociated most of the time, and he used online sources for things to do and as his means of social interactions. (PSR ¶¶265–266). He used online social media platforms as a means of interacting with teenage girls, where he would sometimes ask them for sexually explicit images and try to meet up with them for sexual encounters.[3] (PSR ¶¶216–225, 238–241, 246–248, 249–252).

Mr. Speidel continued to drift along until 2015, when he learned his mother was dying from liver disease and lymphoma. (PSR ¶¶269, 272). So, he moved to Cedar Rapids to see her and spend some time with her before she passed away. *Id*. After spending some time with her, he then ventured west in pursuit of work and a change of setting, settling in Portland, Oregon.

---

[2] Relatedly, for purposes of determining the special assessments in this case, Mr. Speidel has shown the ability to work and maintain employment over his relatively short adult life but lacks any assets or liabilities. (PSR ¶¶286–293). Given the nature of the serious felony sex offense convictions in this case, his future employment prospects will be extremely limited and restricted, further diminishing his future income potential absent a substantial change in his future prospects during his term of imprisonment. He presently qualifies as indigent, and an assessment under the JVTA consequently seems unwarranted. Also, when making the AVAA assessment determination, the Court can further consider that Mr. Speidel will need to make restitution to the victims of his offenses, and imposition of an additional assessment might impair the ability to meet that obligation. The length of sentence ultimately imposed by the Court in this case will also impact Mr. Speidel's future earning capacity and ability to pay any assessment or restitution imposed under any of the applicable statutes.

[3] Mr. Speidel was still a teenager himself at this point but depending on the ages of the teenaged girls relative to his own, and the nature of their interactions and contact with each other, some of his behavior was illegal, and almost all of it was inappropriate.

(PSR ¶272).  He continued to live mostly on his own, while continuing to suffer from depression and anxiety exacerbated by the death of his mother and the other unaddressed traumas from his past. (PSR ¶276).  He has been prescribed Lexapro, Xanax, and Buspirone over the years to treat his mental health, but never engaged in any form of therapy to work through these past experiences. (PSR ¶¶276–277).  He lived in Portland for the next five years, except for brief periods in California and Washington while pursuing work opportunities. (PSR ¶272).  He continued to largely live a "catatonic" daily life, spending time outside of work listening to music, practicing guitar, watching movies, and using cannabis. (PSR ¶¶265–266).  His time online over the years had led to a "heavy" pornography viewing habit that was growing ever more taboo, and he also continued to meet and engage with teenage girls online rather than have direct adult friendships and relationships with people his own age. (PSR ¶266).

     During his time in Portland, Mr. Speidel met fourteen-year-old P.R. through the MeetMe social media application online. (PSR ¶16).  Mr. Speidel was unfazed by P.R.'s age, and their interactions almost immediately turned sexual in nature, including meeting for sex within two days of first communicating in late October of 2018. (PSR ¶¶16–18).  Over the next ten months, the twenty-seven-year-old Mr. Speidel and the fifteen-year-old P.R. engaged in sexual activity approximately five times during their illegal relationship, including sadistic, masochistic, and lewd encounters where Mr. Speidel fetishized their interactions with each other. (PSR ¶¶20–29).  P.R. had a difficult home life, had experienced abuse and other traumas, and believed she loved Mr. Speidel and that he was her only source of support. (PSR ¶¶23, 27).  Their illicit sexual activity was eventually discovered when law enforcement officers found them meeting together in a park. (PSR ¶¶28–32).  Both Mr. Speidel and P.R. initially lied about who they were and what they were doing, but the truth was quickly discovered by investigators. (PSR ¶¶30–36).

This resulted in Mr. Speidel being charged in Oregon with second degree sex abuse, which remains pending and on which he posted bond and returned to Iowa in August of 2019. (PSR ¶¶37, 39, 260).

This investigation was the springboard into further examining Mr. Speidel's activities and communications online. A March 2022 search warrant led to seizure of Mr. Speidel's electronic devices, on which 856 image files and 240 video files depicting child pornography were discovered. (PSR ¶¶58–63). His cell phone also contained evidence of him communicating with minor females over multiple accounts, and investigation into those accounts showed that Mr. Speidel was using Snapchat to both communicate with minors, and to exchange child pornography files with people online. (PSR ¶¶74–75, 209–210). He would engage with minors and offer them money,[4] share images and videos of himself, or build up a relationship with them and bond with them to various degrees to get them to provide him with sexually explicit content of themselves. (PSR ¶¶76–83, 85–90, 92–99, 101–103, 163–164, 168, 182, 185, 195, 198, 202, 208, 212, 230). He would also indicate a desire to meet with some of the minors for sex. (PSR ¶¶76j, 91, 174).

After Mr. Speidel was arrested on federal child pornography charges in this case at the end of May of 2022,[5] it was further discovered that he had again met with P.R. to engage in sexual activity in September of 2020. (PSR ¶38). They had remained in daily communication and continued to pursue their illegal sexual activities and improper relationship in 2020 after he was released from Oregon custody. (PSR ¶¶41–46). They subsequently discussed the pending

---

[4] Some of the minors Mr. Speidel engaged with on Snapchat advertised that they sold nude images and videos of themselves, and Mr. Speidel took advantage of those offers. (PSR ¶212).
[5] Mr. Speidel first appeared on a criminal complaint on June 1, 2022, in this case.

Oregon charge and how P.R might help him, and he tried to rationalize his behavior toward her and other minor girls by telling her it was normal for older men to be attracted to younger girls, and that older women did not understand him and weren't attracted to him. (PSR ¶¶46–48). Mr. Speidel then flew to Oregon, rented a vehicle, picked up P.R., and they went to a hotel in Vancouver, Washington where P.R. was of the age of consent to engage in sexual activity. (PSR ¶¶48–51). They soon ceased communicating, and their relationship quickly deteriorated after that Washington encounter, with P.R. eventually concluding that Mr. Speidel did not actually have feelings about her. (PSR ¶¶52–53).

After his arrest in this case, after conferring with counsel, Mr. Speidel made it known to the government that he intended to accept responsibility for his actions. He never wavered from that acceptance of responsibility for his actions, even as the investigation continued to unfold and reveal the aforementioned conduct in this case. He entered into a plea agreement and entered timely guilty pleas shortly after the superseding indictment was returned in the case, and incorporated his past travel to engage in sexual activity with P.R. in 2020 into the agreement by pleading guilty to an information, rather than requiring that case to be pursued via indictment in Iowa or elsewhere.[6] He is sober, stable, has had time to think on his actions, and regrets what he has done. He understands the seriousness of his offenses and has sought to not put any of the

---

[6] As noted in the presentence report, Mr. Seidel appears on a writ of habeas corpus ad prosequendum in this case. This is because Mr. Speidel was first arrested on a warrant related to the pending related Oregon case but was then writ to federal custody for proceedings in this case. Consequently, Oregon retains primary physical custody of Mr. Speidel. Given that it is currently unknown to the defense whether Oregon intends to continue to pursue that case, and because that offense is relevant conduct in this federal case, Mr. Speidel respectfully requests that the Court order the sentence imposed in this case to run concurrently with any future sentence imposed in Oregon in case W20CR15085, and that the federal sentence be "adjusted" to credit Mr. Speidel for his time in custody since May 6, 2022. *See* USSG §5G1.3(b)(1–2), (c).

victims of his offenses through additional hardships in the way he has conducted himself in the case as it has proceeded. The remaining question now before the Court is what sentence is "sufficient, but not greater than necessary" for Mr. Speidel.

It is clear that Mr. Speidel developed a sexual attraction to teenaged girls, particularly those around the age of fourteen.[7] He developed this attraction when he himself was a teenager, but that attraction has not changed as he aged. Whether through a lack of stable home life and appropriate developmental guidance, the influence of the sexual content available on the internet that froze and warped his and sexual development and perspectives, or both, Mr. Speidel developed an illicit online life over the past decade that largely focused on engaging with teenage girls online for sexual gratification. Sadly, some of the girls that were receptive to such engagement with him appear to similarly come from unstable home environments, suffered traumas of their own, or otherwise were susceptible to flattery or emotional manipulation. He would push the envelope in his online interactions to the point of seeking sadistic and masochistic content to achieve his own sexual gratification. He also sought out sexual encounters with some of those with whom he interacted, and indeed did have the illicit sexual relationship with P.R. that led to the unearthing of the scope of his online life the past decade.

The conduct underlying the offenses of conviction here is very serious, as it involves direct contact with a minor, in addition to efforts to entice contact, successful solicitation of child pornography materials, and obtaining and sharing child pornography materials online. The seriousness of his offense is reflected in the statutory penalties associated with these offenses, and the advisory guideline system that calculates a total offense level that is off the scale of the

---

[7] Although Mr. Speidel did also engage with a girl as young as eight online, she had lied to him and told him she was twelve. (PSR ¶¶58, 80, 93).

10

sentencing table. While properly scored, the advisory guidelines for these sort of offenses hit extremely hard, due to directives related to not grouping the offenses when separate victims are present, cross references to harsher guidelines when child pornography materials are produced, the well-documented issues with the possession of child pornography guidelines involving specific offense characteristics that apply in nearly every case, and the fact that Mr. Speidel engaged in a pattern of behavior that hits him twice under both the Chapter 2 and Chapter 4 sections of the guidelines to drastically increase the offense level under the advisory sentencing guidelines in the case.

But putting aside dissecting the advisory sentencing guidelines and the rationales underlying them for these types of cases, Mr. Speidel knows that there is no scenario where he does not serve a lengthy sentence of imprisonment for his offenses. The Court is tasked not only with ensuring he is punished, but also that the public is protected, and he has posed a danger to minors that is reflected in the offense conduct outlined in the presentence report in the case. But Mr. Speidel also comes before the Court as an individual with only a single prior conviction for possession of a marijuana pipe in 2014 when he was twenty-two years old, an offense that stems from the addiction he developed at fourteen when he began running away and trying to escape from the problems in his own life. (PSR ¶257). He has never been incarcerated before the events of this case, and it does not follow that a lifetime sentence is necessary to deter Mr. Speidel from future criminal conduct or is the only means of protecting the public from him in the future. Though his arrest in Oregon in 2019 did not deter him from continuing to engage in illicit activities online, he was able to post bond, continue living in a dissociated state, and avoid dealing with the reality of that situation in a way he could not do once he went into custody in this subsequent federal case two and a half years later. As noted above, he has never received

any sort of intervention or assistance to deal with traumas in his past or to put the brakes on his behaviors, or to assess his rehabilitative needs and provide resources for him, and the supervised release portion of his sentence will likely serve him well in the future if he is released from prison one day to serve it.  Mr. Speidel knows he needs help, and wants help to change his future by learning an electrical trade, receiving substance abuse treatment, and mental health treatment and therapy. (PSR ¶¶275, 280, 284).  Any sentence the Court imposes in this case will have significant deterrent effect, both generally and on Mr. Speidel specifically, particularly because there are no "short" sentences on the board in this case.  Congress has imposed a mandatory minimum available term of imprisonment of fifteen years as a floor for this conduct, and the maximum available term is lifetime imprisonment.

      The Court, however, must find where on that spectrum of available punishment is a "just" punishment for Mr. Speidel.  Though his pattern of offense behavior has gone on since his late teen years, he is still only thirty-one-years old and has only the one prior drug paraphernalia conviction.  He has fully accepted responsibility for his actions, was ready to do so early in this case, and has continued to do so despite the maximum possible penalty he knew he faced early on.  While his sexual proclivities have been sadistic, masochistic, and humiliating to some of the victims in this case, he did not engage in the sorts of horrific and frightening conduct that has occurred in other cases where lifetime and other extremely long terms of imprisonment have been imposed. *See, e.g.*, *United States v. Crook*, 769 F. App'x 321, 321–22 (8th Cir. 2020) (per curiam) (unpublished) (upholding statutory maximum 120-year sentence for contact child-sex offender that broadcast the abuse online, feigned incompetency during proceedings, and otherwise engaged in flagrant and prolonged deceit efforts to avoid acceptance of responsibility); *United States v. Demeyer*, 665 F.3d 1374, 1374–75 (8th Cir. 2012) (per curiam) (affirming

statutory maximum 120-year sentence for offender who raped his developmentally disabled teenaged daughter, shared sexually explicit materials of her through file sharing and live webcam services on the internet, and possessed over 16,000 still images and 735 videos of child pornography, including 594 files of his daughter); *United States v. Plumman*, 188 F. App'x 529 (8th Cir. 2006) (per curiam) (unpublished) (affirming 384-month below-guideline sentence for forcible sexual abuse and rape of two children in the home).  His immediate acceptance of responsibility, along with incorporating the Oregon offense into the resolution of the case and not engaging in immaterial factual disputes that would require the victims to have to testify in court proceedings, are additional factors that demonstrate that a sentence below the advisory guideline recommendation is appropriate in the case.  He should receive some form of credit for the degree of acceptance of responsibility he has shown in the case.  He is not the worst of the worst sexual offender such that he needs to be removed from society for the rest of his life, and doing so would result in an unwarranted similarity between Mr. Speidel and other similar offenders convicted of similar conduct. *See Gall v. United States*, 552 U.S. 38, 55 (2007) (observing the appropriateness of the district court considering the need to avoid unwarranted *similarities* among other defendants who were not similarly situated) (emphasis in original). What he has done was terrible and damaging to everyone involved, but not so egregious that he must be removed from society forever.

      In conclusion, Mr. Speidel recognizes and regrets what he has done, how it has impacted and will continue to impact his victims and has sought to not further increase their pain by accepting responsibility for what he has done and pleading guilty in this case.  There is no dispute that Mr. Speidel committed very serious crimes, or that the punitive sanction the Court must impose must be harsh.  But the nature and circumstances of Mr. Speidel's offenses do not

warrant a sentence to lifetime imprisonment, particularly when his individual history and characteristics, his acceptance of responsibility for his actions, and desire not to further traumatize people during this case are taken into account. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). The advisory sentencing guideline recommendation for lifetime imprisonment is greater than necessary to fulfill the statutory sentencing goals of 18 U.S.C. § 3553(a), and a lesser sentence is sufficient in this case. Mr. Speidel respectfully requests that the Court vary below that range when imposing punishment in this case.

Respectfully Submitted,

*/s/ Joseph D. Herrold*
Joseph D. Herrold
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: joe_herrold@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2023, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

*/s/ Morgan Conn*, Paralegal